## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| AUGUSTUS HEBREW EVANS, JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 14-1316-RGA |
| | : | |
| JOHNSON AND JOHNSON COMPANY | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

Augustus Hebrew Evans, Jr., James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

Todd C. Schiltz, Esquire, Drinker Biddle & Reath LLP, Wilmington, Delaware, and Daniel J. Brown, Esquire, and Hayley J. Reese, Esquire, McCarter & English, LLP, Wilmington, Delaware, Counsel for Defendants.

## **MEMORANDUM**

May $\langle$ , 2018
Wilmington, Delaware

*Andrew G Andrews*
**ANDREWS, U.S. District Judge:**

Plaintiff Augustus Hebrew Evans, Jr., an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware, who appears *pro se*, filed this action in the Superior Court of the State of Delaware in and for Kent County, Case No. K14C-09-028 RBY, raising claims under Delaware law. The matter was removed to this Court on October 16, 2014. (D.I. 1). The First Amended Complaint is the operative pleading. (D.I. 44). Before the Court are numerous motions filed by Plaintiff. (D.I. 91, 93, 96, 100, 132, 139, 146, 158).

## BACKGROUND

The First Amended Complaint alleges negligence, negligent misrepresentation, breach of warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of express warranty, and fraud by concealment arising out of Defendants' development, marketing, and sale of the drug commonly referred to as Risperdal. (D.I. 44). Upon motion, Plaintiff was provided counsel in the early stages of this case. (*See* D.I. 13). In October 2017, Plaintiff filed a motion to proceed *pro se*. The motion was granted on November 6, 2017, and Plaintiff's counsel withdrew. (D.I. 89). At that time, the parties were advised that the case would proceed on the deadlines set forth in the Court's July 28, 2017 order, including a discovery cutoff deadline of December 15, 2017, and a dispositive motion deadline of March 30, 2018. (D.I. 82). Since that time Plaintiff has filed a number of motions, seeking extensions of time and discovery, many of them complaining about defense counsel's tactics.

1

## DISCOVERY

On November 20, 2017, Plaintiff moved for counsel to forward "all relevant discovery" to Plaintiff. (D.I. 91). Counsel states that discovery responses have been forwarded to Plaintiff. (D.I. 97). Counsel also received in excess of 1,500,000 pages on a hard drive. Counsel objects to printing the pages, both as being prohibitively expensive and, implicitly, as being beyond Plaintiff's capacity, given his living situation, to store and process. Plaintiff recognizes this reality, requesting that the Court prevent "the game they played in sending million documents to choose from with counsel." (D.I. 93 at 2). It is not discharged counsel's job to cull the "relevant discovery" from the million plus pages provided by Defendants. Thus, I consider counsel's provision of discovery responses without the million and a half pages to discharge their obligation to Plaintiff. The motion (D.I. 91), therefore, will be dismissed as moot in part and denied in part.

In addition, Defendants oppose the motion on the grounds that Plaintiff has failed to abide by the Rules of this Court, requiring the production of confidential documents to Plaintiff will violate the terms of the stipulated protective order (D.I. 79), and their production would result in an undue burden that is not proportional to the needs of this case. (D.I. 99). Plaintiff responds that, because he proceeds *pro se*, he should be held to less stringent standards, the discovery is relevant to the needs of the case, a hearing is necessary to resolve this issue, and a protective order could be entered to maintain the confidentiality of the documents. (D.I. 102).

2

Court filings indicate that on May 31, 2017, Defendants were ordered to narrow their proposed production of documents to a more reasonable set. (See D.I. 111 at Ex. 2). The Court is unable to discern from the docket in this case whether this narrowing occurred, although there is evidence that the parties were working toward it while Plaintiff had counsel. (D.I. 77 at 1-2). When reviewing Plaintiff's filings, it appears the discovery he seeks consists of scientific studies or statistical reports regarding males age 40 to 50, that compare the lengths of use of Risperdal and typical injuries associated with its use. (D.I. 92 p.2, D.I. 102 at p.2; D.I. 107 at p.1; D.I. 142 at p.2; D.I. 150 at p.1).

Defendants scheduled Plaintiff's deposition to take place on December 14, 2017. (D.I. 110). Plaintiff opposed on the grounds that on May 31, 2017, Defendants were ordered to narrow their proposed production of documents to a more reasonable set, and it is impossible for him to proceed with his case when he is unable to obtain relevant documents. (D.I. 110, 111, 113). The Court ordered that Plaintiff's deposition be held in abeyance pending a ruling on his opposition. (D.I. 114).

Plaintiff was provided competent counsel who ably represented him, yet he opted to proceed pro se, which is his right. Nevertheless, his decision has consequences. The production of one million plus pages of documents makes it difficult, if not impossible, to provide him paper documents. This is especially true in light of prison rules and regulations regarding the storage of documents in an inmate's cell. Nor does it seem feasible to produce the voluminous documents at a location for Plaintiff to personally review them to determine if any of the documents are relevant to the issues

he raises. Plaintiff seems most interested in the production of scientific studies or statistical reports regarding males age 40 to 50, that compare lengths of use of the Risperdal and typical injuries associated with its use. Given that Plaintiff has identified with some specificity what he is seeking, it seems like a reasonable first step to find out whether such discovery exists. Defendants will be ordered to identify and describe any responsive discovery, including the length of any such discovery. At the same time, Defendants may address any confidentiality concerns and how those concerns may be resolved.

Finally, Plaintiff has filed numerous motions for conferences or hearings "to bring order to this case" and to extend deadlines. (D.I. 93, 100, 139, 150, 151). Plaintiff, who is incarcerated, indicates that he could participate by telephone, video, or in person. Plaintiff argues that Defendants will "fully exploit the fact that he is incarcerated," and, that at the time he filed the request, he had received "zero discovery from prior counsel." (D.I. 93). Plaintiff seeks to amend the scheduling deadlines on the grounds that it is impossible for him to abide by the schedule "due to the elephant in the room." (D.I. 100). Defendants oppose, but indicate they will participate in a conference if it would be helpful to the Court. (D.I. 143).

Plaintiff's motions for hearings/conferences will be denied, but the motion to amend deadlines will be granted. In light of the posture of this case, the Court will cancel the pretrial conference and trial dates, to be rescheduled once the Court is satisfied the discovery issue regarding the production of scientific studies or statistical

4

reports, as discussed above, has been addressed and resolved, and Plaintiff's deposition has taken place.[1]

## MOTION FOR APPOINTMENT AND/OR FUNDS FOR EXPERT

Plaintiff seeks funds to obtain expert services "necessary for adequate representation of the facts and science of complex[] residual affects of using the drug Risperdal" pursuant to 18 U.S.C. § 3006A(e)(1) or other statutes. (D.I. 96). Plaintiff argues that the services of an expert are necessary to mount a plausible finding that the use of Risperdal is the direct cause of injuries sustained, and, that without such services and the funds for such services, Plaintiff's case will be severely prejudiced. (Id.). Defendants oppose the motion on the grounds that Plaintiff has failed to meet his burden to establish he is entitled to the relief he seeks and, further, well-established case law provides that Plaintiff is not entitled to the appointment of an expert witness. (D.I. 101). Plaintiff replies that Defendants' opposition presents some irrelevant facts, and he cannot compete with the lawyers and he is severely prejudiced without appointment and/or funds for an expert. (D.I. 108).

The criminal procedure statute relied upon by Plaintiff is inapplicable to this civil matter. Federal Rule of Evidence 706 provides that a District Court may "order the parties to show cause why expert witnesses should not be appointed." Fed. R. Evid. 706(a). A court-appointed expert is entitled to compensation either "from any funds that

---

[1] To be clear, if Defendants want to take Plaintiff's deposition, they do not need to wait for the resolution of Plaintiff's discovery requests. In theory, at least, Plaintiff's deposition might be quite useful in narrowing the issues in the case.

are provided by law" or, from "the parties in the proportion and at the time that the court directs -- and the compensation is then charged like other costs." Fed. R. Evid. 706(c).

As explained by the Third Circuit, "[w]e understand that some courts have held that Rule 706 can be used to appoint an expert for an indigent civil litigant and apportion the costs of such expert to the other side." *Born v. Monmouth Cnty. Correct. Inst.*, 458 F. App'x 193, 197-98 (3d Cir. 2012) (citing *Ledford v. Sullivan*, 105 F.3d 354, 360 (7th Cir. 1997); *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996); *McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991), *vacated and remanded on other grounds sub nom. Helling v. McKinney*, 502 U.S. 903 (1991); *Webster v. Sowders*, 846 F.2d 1032, 1038-39 (6th Cir. 1988); *United States Marshals Serv. v. Means*, 741 F.2d 1053, 1058 (8th Cir. 1984)). However, the Third Circuit has never joined in these holdings. *Id.* (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3d Cir. 1987) (finding no statutory authority for courts to pay expert witness fees of indigent civil litigants; not mentioning Fed. R. Evid. 706)). In addition, were I to use Rule 706 to appoint an expert witness, the exercise of such authority is in my discretion. *Id.* at 198 (citing *Hannah v. United States*, 523 F.3d 597, 601 n. 2 (5th Cir. 2008); *Means*, 741 F.2d at 1059 (noting that litigants should be tasked with paying expert fees for their indigent opponents only in "compelling circumstances")).

After reviewing Plaintiff's filings, I determine that Plaintiff has failed to date to make a sufficient showing to warrant appointment of an expert witness. Therefore, the motion (D.I. 96) will be denied.

6

## LETTER/MOTION FOR FUNDS FOR DEPOSITIONS
## AND TO UTILIZE THE COURTHOUSE

Plaintiff requests funds for depositions and to use the courthouse. (D.I. 132). Defendants oppose on the grounds that Plaintiff has not established he is entitled to this relief, and it is clear from case law that Plaintiff is responsible for his own litigation expenses. (D.I. 140). Plaintiff responds that he has "absolutely no discovery," Defendants manipulate proceedings to their advantage, and he is unable to get the statistical data of males he needs. (D.I. 142).

"There is no provision [under the *in forma pauperis* statute, 28 U.S.C. § 1915,] for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant." *Tabron v. Grace*, 6 F.3d 147, 159 (3d Cir. 1993). Nor do I see any reason at this time to exercise any "inherent equitable powers" to provide any relief to Plaintiff.[2] Accordingly, the motion (D.I. 132) will be denied.

## MOTION TO STAY ALL PROCEEDINGS

On February 14, 2018, Plaintiff filed a motion to stay all proceedings on the grounds that the docket is very confusing, since the depositions have been held in abeyance several deadlines have come and gone, and there still is no adequate discovery. (D.I. 146). Plaintiff seeks a stay until "order is established," and all pending

---

[2] One exception is that, if Defendants depose Plaintiff, I request that they provide him with a complete transcript of the deposition.

motions are resolved. (Id.). Defendants oppose a stay, but acknowledge that the scheduling order may require amendment. (D.I. 148).

The Court does not find it necessary to stay the case. Therefore, the motion (D.I. 146) will be denied.

## MOTION FOR *DAUBERT* HEARING

On April 9, 2018, Plaintiff filed a motion for a *Daubert* hearing to resolve the issue of the admissibility of Defendants' proposed expert testimony, as set forth in an expert report. (D.I. 158). Plaintiff contends that the expert opinion is inadmissible. (Id.). Defendants oppose the motion on the grounds that the request is untimely, their expert is qualified, he applied a reliable methodology, and the expert is not offered as an expert on causation. (D.I. 162).

Should this matter proceed to trial, Defendants plan to present the expert testimony of psychiatrist Harvey M. Hammer, M.D. (See D.I. 129). Defendants argue that Plaintiff challenges Dr. Hammer's conclusions rather than his methodology and this is more properly addressed during cross-examination. In addition, Defendants note that they did not rely upon Dr. Hammer's opinions in support of their motion for summary judgment.[3]

"*Daubert* requires that, when faced with a proffer of expert testimony, a trial judge determine 'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.'" *Walker v.*

---

[3] I reviewed the motion for summary judgment and the accompanying brief (D.I. 152 & 153), and it appears to be the case that Dr. Hammer's opinions are irrelevant to the summary judgment motion.

8

Gordon, 46 F. App'x 691, 694 (3d Cir. 2002) (quoting Daubert v. Merrell Dow Pharm., 509 U.S. 579, 592 (1993)). Under Daubert, trial courts are required to apply a reliability analysis to an expert's opinion. An opinion is "reliable" if it is based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation." Id. (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (1994) and Daubert, 509 U.S. at 590). The role of the Court is simply to evaluate whether the methodology utilized by the expert is reliable, i.e., whether, when correctly employed, that methodology leads to testimony helpful to the trier in fact. Id. (citing Daubert, 509 U.S. at 591-93 (noting that the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue" and that the trial court's determination "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue")).

In his motion, Plaintiff requests an "immediate" hearing. The request is premature. It may never need to be addressed, but if it needs to be addressed, it ought to be at a later stage of the case, that is, after the conclusion of discovery and the resolution of the summary judgment motion. Accordingly, the motion (D.I. 158) will be dismissed without prejudice to renew, which Plaintiff may do after resolution of the summary judgment motion by filing a one-page letter renewing the request on the basis of the already-submitted briefing.

## CONCLUSION

9

Based upon the above discussion, the Court will: (1) deny Plaintiff's motion for prior counsel to turn over discovery (D.I. 91); (2) deny Plaintiff's motion for appointment and/or funds for expert (D.I. 96); (3) grant Plaintiff's letter/motion to amend scheduling deadlines (D.I. 100); (4) deny Plaintiff's motion for funds for depositions and to utilize the courthouse (D.I. 132); (5) deny Plaintiff's motion for a conference and adjusted schedule of case (D.I. 139); (6) deny Plaintiff's motion to stay (D.I. 146); (7) dismiss without prejudice to renew Plaintiff's motion for an immediate *Daubert* hearing (D.I. 158); (8) order Defendants to identify and describe (including the number of pages), if they exist, scientific studies or statistical reports regarding males age 40 to 50, that compare lengths of use of Risperdal and typical injuries associated with its use, as sought by Plaintiff, and address any confidentiality concerns Defendants may have and how those concerns may be resolved; and (9) cancel the final pretrial conference and trial, to be rescheduled.

An appropriate Order will be entered.